1

2

3

4

5

6          **IN THE UNITED STATES DISTRICT COURT**

7          **FOR THE DISTRICT OF ARIZONA**

8

9    United States of America,                    No. CR-15-01868-001-TUC-JGZ

10                      Plaintiff,                 **ORDER**

11   v.

12   Eduardo Vasquez Durazo,

13                      Defendant.

14

15         On February 26, 2016, Magistrate Judge Bernardo P. Velasco issued a Report and

16   Recommendation ("R&R") (Doc. 57) in which he recommended that Defendant Eduardo

17   Vasquez Durazo's Motion to Suppress evidence obtained as a result of a traffic stop

18   (Doc. 24) be denied and that Defendant's Motion to Suppress evidence obtained as a

19   result of a vehicle search (Doc. 25) be granted.[1]  Both Defendant and the government

20   filed Objections to the R&R. (Docs. 60, 61.) For the reasons stated herein, the Court

21   adopts the R&R with respect to Doc. 24 and rejects the R&R with respect to Doc. 25.

22                              **STANDARD OF REVIEW**

23         The Court reviews de novo the objected-to portions of the R&R. 28 U.S.C. §

24   636(b)(1); Fed. R. Civ. P. 72(b). The Court reviews for clear error the unobjected-to

25   _____

26         [1] The R&R also recommended that Defendant's Motion to Suppress evidence of
     Defendant's prior arrest for alien smuggling be granted. Neither party objected to that
27   portion of the R&R and the Court finds no clear error in that portion of the R&R.
     Therefore the Court will adopt the recommendation of the Magistrate Judge with respect
28   to the Defendant's prior arrest as a preliminary ruling as to the admissibility of that
     evidence.

1   portions of the R&R. *Johnson v. Zema Systems Corp*., 170 F.3d 734, 739 (7th Cir. 1999);

2   *see also Conley v. Crabtree*, 14 F.Supp.2d 1203, 1204 (D. Or. 1998). If the Court rejects

3   the credibility findings of the magistrate judge, a de novo hearing is required. *United*

4   *States v. Ridgway*, 300 F.3d 1153, 1157 (9th Cir. 2002).

5                                    **FACTUAL BACKGROUND**

6           The factual background contained in Magistrate Velasco's R&R (Doc. 57) is

7   adopted as supplemented by the additional facts stated in this Order.  United States

8   Border Patrol Agent Eric Jaramillo was the sole witness to testify at the evidentiary

9   hearing on the motions.  The Court notes that while the parties dispute the legal

10  significance of Agent Jaramillo's observations, they do not dispute the veracity of his

11  observations.

12                                         **DISCUSSION**

13          The Defendant objects to the Magistrate Judge's finding that Agent Jaramillo had

14  reasonable suspicion to stop Defendant's vehicle on September 22, 2015.   The

15  Government objects to the Magistrate Judge's finding that Agent Jaramillo's search of

16  the vehicle exceeded the scope of the search to which Defendant had consented. The

17  Court concludes that Agent Jaramillo's stop of Defendant's vehicle was supported by

18  reasonable suspicion. The Court further finds that Agent Jaramillo's search did not

19  exceed the scope of Defendant's consent and that, regardless of Defendant's consent,

20  Agent Jaramillo had probable cause to search Defendant's vehicle.  Accordingly, the

21  Court will deny Defendant's Motions to Suppress.

22  **1.      Agent Jaramillo had reasonable suspicion to stop Defendant's vehicle**

23          A border patrol agent may conduct "brief investigatory stops" without violating

24  the Fourth Amendment "if the officer's action is supported by reasonable suspicion to

25  believe that criminal activity may be afoot." *United States v. Valdes-Vega*, 738 F.3d

26  1074, 1078 (9th Cir. 2013) (citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).

27  Reasonable suspicion is defined as "a particularized and objective basis for suspecting the

28  particular person stopped of criminal activity." *Id*. (citation omitted). The reasonable-

1    suspicion standard is not a particularly high threshold to reach. *Id.* "Although ... a mere

2    hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to

3    the level required for probable cause, and it falls considerably short of satisfying a

4    preponderance of the evidence standard." *Arvizu*, 534 U.S. at 274. When reviewing a

5    border patrol officer's reasonable suspicion, the Court must consider the totality of the

6    circumstances, including characteristics of the area, proximity to the border, usual

7    patterns of traffic and time of day, previous alien or drug smuggling in the area, behavior

8    of the driver, appearance or behavior of passengers, and the model and appearance of the

9    vehicle and the agent's training and experience. *See Valdes-Vega*, 738 F.3d at 1079

10   (citing *United States v. Brignoni–Ponce*, 422 U.S. 873, 884–85 (1975)). Not all of these

11   factors must be present or highly probative in every case to justify reasonable suspicion.

12   *See id.*

13        Agent Jaramillo's testimony established that numerous factors are present in this

14   case.  On September 22, 2015, Agent Jaramillo was assigned to roving patrol because the

15   Highway 191 Border Patrol checkpoint was closed due to rain. (Doc. 54, pg. 6.) In Agent

16   Jaramillo's eight years of experience and training, drug and alien smuggling operations

17   use closed checkpoints as an opportunity to transport illegal loads. (*Id.*, pgs. 4, 6, 9.)

18   While on roving patrol, Agent Jaramillo observed a Ford F-250 truck with an amber light

19   on the roof consistent with a commercial vehicle, but the truck did not have any other

20   markings to suggest it was a commercial vehicle. (*Id.*, pg. 11.) The license plate on the

21   truck did not have letters typically assigned to commercial vehicles. (*Id.*) The truck had

22   been newly-registered in Defendant's name; Agent Jaramillo knew from his training and

23   experience that smugglers often transport illegal cargo in newly-registered vehicles. (*Id.*,

24   pg. 16.) A newly-registered Jeep SUV was traveling 15-20 car lengths behind the F-250;

25   the traffic on that day was light and, apart from the F-250 and the Jeep traveling close

26   together, Agent Jaramillo had observed a car pass by only every few minutes.[2] The Jeep

27   _____

28        [2] The Court has not considered Agent Jaramillo's testimony that he believed the vehicles were traveling together because they both passed the Dragoon Road turnoff, which is believed to be a short-cut to Tucson. At the time of the stop, Agent Jaramillo

1
2
3
4

had entered the United States through the Douglas Port of Entry that morning. (*Id*., pg. 13.) Both the F-250 and the Jeep had Treasury Enforcement Communication System (TECS) alerts: the Jeep had been involved in narcotics smuggling and Defendant -- the registered owner of the F-250 -- had a prior arrest for alien smuggling. (*Id*., pgs. 13-17.)

5
6
7
8
9
10
11
12
13
14
15
16
17

Under the totality of the circumstances, Agent Jaramillo had reasonable suspicion to stop Defendant's Ford F-250. At the time of the stop, Agent Jaramillo knew Defendant had a prior arrest for alien smuggling and was driving along a known smuggling route when smuggling was believed to be more likely due to the checkpoint closure. Defendant's vehicle was traveling in close proximity with another vehicle that had recently crossed the border and was known to be involved in narcotics smuggling. The fact that the two vehicles were traveling together was inconsistent with the light traffic pattern at the time, suggesting that the vehicles were driving in tandem. Defendant's vehicle and the Jeep were newly-registered vehicles; Agent Jarmillo knew from his training and experience that newly-registered vehicles such as Defendant's were more likely to be used in smuggling operations. These factors, taken as a whole, formed an objective basis for Agent Jaramillo to reasonably suspect that Defendant was involved in illegal activity.[3]

18
19
20

**2.   Agent Jaramillo's search did not exceed the scope of Defendant's consent, but even if it did, Agent Jaramillo had probable cause to search behind Defendant's back seat**

21
22
23

The Magistrate Judge concluded that Agent Jaramillo's search of Defendant's vehicle exceeded the scope of Defendant's consent because Defendant had only agreed that Agent Jaramillo could "look" in the backseat, and Agent Jaramillo discovered drugs

24

25
26

had no reason to believe the vehicles were traveling to Tucson as opposed to Willcox. (Id., pg. 12.)

27
28

[3] The Court disagrees with Defendant's assertion that Agent Jaramillo's observations amount to unfounded assumptions and broad profiles. Although some of the facts observed by Agent Jaramillo may also be indicative of innocent behavior, in combination, under the totality of the circumstances, they amount to reasonable suspicion.

1   in Defendant's car after moving the back seat rest forward.[4] (Doc. 57, pgs. 3-4.) In the

2   pending Objection, the government argues that Agent Jaramillo's search did not exceed

3   the scope of Defendant's consent, and that even if it did, Agent Jaramillo had probable

4   cause to search the vehicle.[5]  The Court agrees.

5          "[T]he standard for measuring the scope of a suspect's consent under the Fourth

6   Amendment is that of 'objective' reasonableness—what would the typical reasonable

7   person have understood by the exchange between the officer and the suspect?" *Florida v.*

8   *Jimeno*, 500 U.S. 248, 251 (1991).  It is "objectively reasonable" for a police officer to

9   believe that a consent to search a specific area authorizes the opening of "a closed

10  container found within [the area] that might reasonably hold the object of the search." *Id.*

11  at 249. Failure to object to the continuation of a vehicle search after giving general

12  consent to search "is properly considered as an indication that the search was within the

13  scope of the initial consent." *United States v. Cannon*, 29 F.3d 472, 477 (9th Cir. 1994).

14         Here, a reasonable person would have understood that Agent Jaramillo's request to

15  "look" in the back seat could include moving the back seat rest forward in order to see

16  the entire back seat area of the truck cab. Agent Jaramillo stopped Defendant based on a

17  reasonable suspicion that Defendant was engaged in drug smuggling: it was objectively

18  reasonable for Agent Jaramillo to also believe that Defendant's consent authorized

19  moving the back seat rest forward to look for drugs hidden behind it. Finally, Defendant

20  did not object when Agent Jaramillo moved the back seat rest forward, which further

21  indicates that Agent Jaramillo was operating within the scope of Defendant's consent.

22  *See Cannon*, 29 F.3d at 477 (search was within scope of consent where defendant did not

23  protest when officer searched the interior of the car, including the glove compartment, or

24  when officer walked around to the trunk and used defendant's key to open it).

25

26         [4] The Magistrate Judge did not address Defendant's argument that his consent was
    not voluntarily given. Defendant does not re-urge this argument in his objections and the
    Court considers the argument abandoned.

27

28         [5] The government raised its probable cause argument in its response to
    Defendant's Motion to Suppress evidence obtained as a result of the vehicle search, but
    the Magistrate Judge did not address that argument in his R&R. (Doc. 33, pgs. 6-7.)

1      Regardless of whether Agent Jaramillo's search was within the scope of
2  Defendant's consent, Agent Jaramillo's search was supported by probable cause. Under
3  the automobile exception to the Fourth Amendment's warrant requirement, the police
4  may search an automobile and the containers within it where they have probable cause to
5  believe contraband or evidence is contained. *See United States v. Cervantes*, 703 F.3d
6  1135, 1139 (9th Cir. 2012) (citing *California v. Acevedo*, 500 U.S. 565, 580 (1991)). An
7  officer will have probable cause to search if there is a fair probability that contraband or
8  evidence of a crime will be found in a particular place, 'based on the totality of
9  circumstances. *See id.* (citing *Dawson v. City of Seattle*, 435 F.3d 1054, 1062 (9th Cir.
10  2006)). If a law enforcement officer has probable cause to search a vehicle, that probable
11  cause extends to all contents in the vehicle that could be connected to the suspected
12  criminal activity. *United States v. Ewing*, 638 F.3d 1226, 1231 (9th Cir. 2011).

13      At the time Agent Jaramillo pulled Defendant's back seat forward, he knew, in
14  addition to the information he observed before the stop, that Defendant claimed to be
15  traveling from Douglas to Tucson to buy auto parts for the F-250, which he had
16  purchased the week before. (Doc. 54, pg. 19.) Agent Jaramillo was aware that there is an
17  auto parts store in Douglas and two other auto parts stores along the portion of Highway
18  191 that Defendant had just traveled. (*Id.*) Agent Jaramillo asked if he could look in the
19  back seat, and Defendant agreed, saying that the back seat contained only tools. (*Id.*, pg.
20  20.) When Agent Jaramillo opened the back door, he immediately detected a strong odor
21  of axle grease, which he knew from his experience is used to mask the odor of narcotics.
22  (*Id.*, pg. 23.) Contrary to Defendant's statement, there were no tools in the back seat.[6]
23  (*Id.*, pgs. 23-24; *see also* Exhibit 5.)   The back seat of Defendant's F-250 had an
24  obviously lumpy appearance, as though something was stuffed into the seat. (*Id.*) After
25  pulling the back seat rest forward, Agent Jaramillo could see rectangular objects wrapped

26

27

28      [6] Agent Jaramillo testified that he could not recall whether there were tools in the back seat. (Doc. 54, pg. 36.) No tools are visible in Exhibit 5.

1   in cellophane, which he recognized as marijuana, exposed from under the upholstery.[7]

2   (*Id*., pgs. 24-25, 44; *see also* Exhibit 6.)

3          The Magistrate Judge found that Agent Jaramillo's search of Defendant's vehicle

4   began when Agent Jaramillo moved the back seat rest forward. (Doc. 57, pg. 3.)

5   Assuming that to be true, the Court concludes that Agent Jaramillo had probable cause to

6   search Defendant's vehicle at that time. Agent Jaramillo had already stopped Defendant

7   based on a reasonable suspicion that Defendant was engaged in smuggling. In addition to

8   all the knowledge that contributed to the stop, Agent Jaramillo also knew that Defendant

9   had provided an implausible explanation for his trip. Agent Jaramillo could smell a

10  known masking agent emanating from the back seat. In addition, and most persuasive to

11  this Court, the photo of Defendant's back seat, admitted as Exhibit 5, shows the obvious

12  lumps pushing against or underneath the back seat upholstery which have no logical

13  place in a newly purchased, newly registered vehicle. The lumps compel the conclusion

14  that the back seat rests have been stuffed with something. In light of the other

15  circumstances surrounding Defendant's stop, Agent Jaramillo had probable cause to

16  conclude that the "something" within the vehicle upholstery was drugs.

17                                                    **CONCLUSION**

18         After an independent review of the pleadings, exhibits and transcript, IT IS

19   HEREBY ORDERED that:

20      1. The Report and Recommendation (Doc. 57) is ACCEPTED in part and

21         REJECTED in part;

22      2. Defendant's Motion to Suppress evidence of Defendant's prior arrest for alien

23         smuggling (Doc. 23) is GRANTED;

24      3. Defendant's Motion to Suppress evidence obtained as a result of his traffic stop

25         (Doc. 24) is DENIED;

26   //

27

28         [7] Exhibit 7 shows the marijuana in the back seat rest once the back seat cover has been pulled back, following Defendant's arrest. Agent Jaramillo testified that he did not need to pull back the seat cover in order to see the marijuana. (Doc. 54, pg. 25.)

1    Defendant's Motion to Suppress evidence obtained as a result of a vehicle search

2    (Doc. 25) is DENIED.

3        Dated this 28th day of April, 2016.

4

5

6

7                                    Jennifer G. Zipps
                                     United States District Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28